**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Linda Arce,

    Plaintiff,

v.

Honeywell International Incorporated,

    Defendant.

No. CV-21-00768-PHX-GMS

**ORDER**

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. 91). For the reasons detailed below, Defendant's Motion for Summary Judgment is granted.

## BACKGROUND

Linda Arce ("Plaintiff") was employed by Honeywell International Incorporated ("Defendant") from May 6, 1996, until February 6, 2021, in Phoenix, Arizona. (Doc. 89 at 2). Defendant terminated Plaintiff's employment as a Product Development Quality Engineer on February 6, 2021. (*Id.*) During her employment, Plaintiff's manager was Mark Hetelle. (*Id.* at 3). Plaintiff is a Hispanic female of Mexican national origin. (*Id.* at 2).

The following facts, as presented by Plaintiff, are contested. During Plaintiff's employment, she worked on a project for Boeing, which Plaintiff alleges was part of a contract between Boeing and the United States Navy. (Doc. 95-1 at 152). Between June 15, 2017, and October 18, 2018, Plaintiff initiated four Corrective Action Reports ("CAR") regarding alleged noncompliance issues with Defendant's products, including on the

...

Boeing project. (Doc. 95 at 4–5). During this time, Plaintiff alleges she told Mr. Hetelle that he treated her unfairly, which she testified was because of her skin color and sex. (Doc. 95-1 at 175).

Plaintiff points to a series of negative events throughout her employment. First, Mr. Hetelle identified Plaintiff as being "at the bottom" due to her communication style. (*Id.* at 122). Second, Plaintiff was issued a Performance Improvement Plan ("PIP") on March 13, 2019. (*Id.* at 106–08). Third, Plaintiff alleges she was "pressured by [Defendant] to sign off on Boeing documents despite her relaying six separate compliance issues," with one engineer insisting she would call Plaintiff to walk her through her issues until she signed off. (Doc. 95 at 6; Doc. 92-8 at 11). Fourth, Defendant prepared a termination summary for Plaintiff in June or July of 2019. (Doc. 95-1 at 69). Fifth, Plaintiff was put on unpaid medical leave on October 31, 2019, which, according to Defendant, was unpaid because her FMLA leave ran out. (Doc. 92-2 at 37–38; Doc. 95-1 at 191). Finally, Plaintiff cites her ultimate termination on February 6, 2021. (Doc. 89 at 2; Doc. 95 at 6).

According to Defendant, and not challenged by Plaintiff, Plaintiff injured her toe and requested FMLA leave on July 12, 2019. (Doc. 91 at 3). This was while Plaintiff was on her PIP. (*Id.*). Plaintiff then requested FMLA leave and short-term disability. (Doc. 91 at 4; Doc. 92 at 5). Plaintiff also requested intermittent FMLA leave to care for her son from July 18, 2019, through January 17, 2020, and for herself from May 1, 2019, through October 31, 2019. (Doc. 92 at 5). Her continuous FMLA leave and short-term disability were approved; her requests for intermittent FMLA leave were denied, according to Defendant, because "her failure to provide a completed medical certification." (Doc. 91 at 4). While Plaintiff maintains that her requests for intermittent leave were improperly denied, the parties agree that Plaintiff was given unpaid medical leave starting October 31, 2019. (Doc. 92-2 at 46; Doc. 95-1 at 191–92). On December 21, 2020, Plaintiff received a termination letter indicating she had exceeded the time off allowed by Plaintiff's policy—18 months—and would be terminated after 30 days, unless she returned to work. (Doc. 95-1 at 166; Doc. 92-19 at 61–62). On February 8, 2021, Plaintiff's employment was

terminated.  (Doc. 92-2 at 135).

On April 30, 2021, Plaintiff filed this action based on claims under the False Claims Act ("FCA"), the Family Medical Leave Act ("FMLA"), Title VII, and the Equal Pay Act ("EPA").  (Doc. 1; Doc. 7).

## DISCUSSION

### I.     Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record,] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).  A district court has no independent duty "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (*quoting Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).

### II.    False Claims Act

"The FCA imposes liability on any individual that knowingly defrauds the federal government." *Hamilton v. Yavapai Cmty. Coll. Dist.*, No. CV-15-08095-PCT-GMS, 2016 WL 7102973, at *3 (D. Ariz. Dec. 6, 2016) (*quoting* 31 U.S.C. § 3729).  The FCA further authorizes relief for employees who experience adverse job actions due to their lawful participation in an FCA suit or to stop a violation under the FCA.  31 U.S.C. § 3730(h).

To succeed on an FCA relation action, plaintiffs must prove three elements: "1) the employee must have been engaging in conduct protected under the Act; 2) the employer must have known that the employee was engaging in such conduct; and 3) the employer must have discriminated against the employee because of her protected conduct." *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996). "The plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action." *Id.* Liability under the FCA attaches when a fraudulent claim for payment is presented to the US government by an individual or entity. *Id.* at 1265–66. "Mere regulatory violations do not give rise to a viable FCA action." *Id.* at 1267.

In *Hopper*, a teacher complained to her superiors when she discovered the school district failed to comply with certain state and federal laws. *Id.* at 1263. The Ninth Circuit upheld the summary judgment against the teacher on her False Claims Act claims because it found the teacher was not engaged in "furtherance of an action." *Id.* at 1269. In other words, the teacher was not herself initiating an FCA claim, whistleblowing, or investigating fraud. *Id.* Rather, the teacher was merely trying to move her employer into federal and state compliance. *Id.* ("Correcting regulatory problems may be a laudable goal, but one not actionable under the FCA in the absence of actual fraudulent conduct.").

Plaintiff's FCA claims fall victim to the same deficiency: the record does not show that Plaintiff was engaged in a protected activity. The record indicates part of Plaintiff's job was to ensure compliance with applicable regulations and industry standards. While compliance is an important aspect of Defendant's industry, Plaintiff's quality-assurance duties are not synonymous with preventing fraud. Plaintiff has not presented evidence that she was investigating fraudulent activity. The flagging of potential compliance issues by Plaintiff in the course of her work is not protected activity as contemplated by the FCA.

Because Plaintiff has not shown she was engaged in protected activities under the FCA, Defendant is entitled to summary judgment on Plaintiff's FCA claims.

**III.   Family Medical Leave Act**

The FMLA provides employees with the "right to use a certain amount of leave for

protected reasons," and makes "it unlawful for an employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided' by the Act." *Bachelder v. America West Airlines*, 259 F.3d 1112, 1122 (9th Cir. 2001) (*quoting* 29 U.S.C. § 2615(a)(1)). In interpreting the FMLA, the Ninth Circuit has held that "employer actions that deter employees' participation in protected activities constitute 'interference' or 'restraint' with the employees' exercise of their rights." *Id.* at 1123.

A plaintiff must show five elements for a prima facie case of FMLA interference: (1) she was eligible for FMLA protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice for FMLA leave, and (5) the employer denied FMLA benefits she was entitled to. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 43 (9th Cir. 2014). Claims under the FMLA must be brought within two years of the alleged violation; three years for willful violations. 29 U.S.C. § 2617.

### A. First FMLA Allegation

Plaintiff's first FMLA claim is time barred. Plaintiff alleges interference during her intermittent FMLA leave, which ended on December 17, 2018. (Doc. 7 at 6). Plaintiff filed her first complaint over two years later, on April 30, 2021. (Doc. 1). Plaintiff has not produced evidence showing that Defendant willfully violated her FMLA rights, nor does she allege it. Plaintiff's response, too, is silent on a charge of willfulness, even after Defendant highlighted the time-barred nature of Plaintiff's claims.

Because Plaintiff filed her claim over two years after the alleged conduct, Plaintiff's first claim of FMLA interference is time-barred.

### B. Second FMLA Allegation

Plaintiff next alleges FMLA interference based on an FMLA request made July 17, 2019. (Doc. 7 at 6). The parties dispute the order in which Plaintiff's requests for FMLA leave were made and denied. However, even taking the facts as laid out by the Plaintiff, Defendant is entitled to summary judgment. Plaintiff alleges she applied for FMLA leave on July 17, 2019. (Doc. 7 at 6; Doc. 95 at 17–18). While Plaintiff alleges her request was

initially denied, she also submits that she was ultimately granted paid FMLA leave from July 17, 2019, through October 31, 2019. (Doc. 95 at 18). Plaintiff does not present evidence or argument in her briefing that claims her leave was not exhausted on October 31, 2019. (Doc. 95 at 17–18). In other words, even if Plaintiff's facts regarding retroactive approval are accurate, she still received the FMLA benefits she was entitled to.

Accordingly, Plaintiff has not shown a prima facie case of FMLA interference because she has not shown she was ever denied leave she was entitled to under the FMLA.

**IV.    Title VII**

For a plaintiff to sue under Title VII, she must first exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-5(b), (e)(1). To establish federal jurisdiction, plaintiffs have 180 days to file charges with the EEOC; they have 300 days to file if they first sought relief through a state or local agency. *Id.* § 200e-5(e)(1). Failure to timely file bars federal subject matter jurisdiction. *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 99 (9th Cir. 2002).

Parties agree that Plaintiff filed one charge with the EEOC on January 8, 2020. (Doc. 91 at 6; Doc. 95 at 15). The parties disagree regarding the date Plaintiff received her PIP. (Doc. 96 at 27). The disagreement is immaterial because Plaintiff's filing with the EEOC was time barred under either party's date. Even if Plaintiff's later date of March 13, 2019, was correct and, further assuming, she had the extended 300 days to file, Plaintiff had to file with the EEOC by January 7, 2020. The EEOC did not receive a charge from Plaintiff until one day later—January 8, 2020. (Doc. 92-24 at 6). Using the facts most favorable for the nonmovant, Plaintiff's first filing remains untimely.

Plaintiff made a second amended EEOC filing on January 24, 2022, based on her February 8, 2021, termination. (Doc. 92-24 at 10). Parties dispute whether this filing should be treated as a separate filing or under Plaintiff's initial EEOC filing. (Doc. 91 at 6–7; Doc. 96 at 28). The distinction is immaterial. If considered an amendment, Plaintiff's January 8, 2020, filing remains untimely. If considered a separate filing, Plaintiff only had until December 3, 2021, to file a complaint based on the date of her termination. In either

case, both of Plaintiff's filings with the EEOC were untimely.

Because Plaintiff did not timely file her complaints with the EEOC, her Title VII claims are time-barred.[1]

## V. Equal Pay Act

The EPA prohibits employers from discriminating "between employees on the basis of sex" by paying a lower rate for equal work. 29 U.S.C. § 206(d)(1). "To make out a prima facie case, the plaintiff bears the burden of showing that the jobs being compared are 'substantially equal.'" *Stanley v. Univ. S. Cal.*, 178 F.3d 1069, 1074 (9th Cir. 1999). "In assessing a plaintiff's claim of substantial equality between jobs, a court should rely on actual job performance and content rather than job descriptions, titles, or classifications." *Forsberg v. Pacific Nw. Bell Tel. Co.*, 840 F.2d 1409, 1414 (9th Cir. 1988). "[T]he EPA defines what constitutes equal work by specifying that jobs are equal if their performance requires 'equal skill, effort, and responsibility' and they are performed under "'similar working conditions.'" *Id.* Even where there is pay disparity between two substantially similar jobs, an EPA claim will not succeed where the difference in pay is based on "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

Plaintiff has not made a prima facie case for an EPA violation. Plaintiff bases her EPA claim on one employee: Robert Mote (also referred to as Mota). (Doc. 91 at 10; Doc. 95 at 19). Plaintiff's only evidence to substantiate her claim is her own deposition, in which she claims Mr. Mote told her he made twice as much as she did. (Doc. 92-2 at 63). In her testimony, Plaintiff admitted she did not know which position Mr. Mote held when he allegedly earned that amount. (*Id.*) Furthermore, Plaintiff admitted Mr. Mote did not work in the same division as did she. (*Id.*). Federal Rule of Evidence 801 casts doubt on whether Plaintiff's testimony—the only evidence offered to support her EPA claim—would be

---

[1] Had Plaintiff filed on time, summary judgment would still be warranted regarding her Title VII claims. Plaintiff did not present evidence of discrimination based on race, sex, national origin, or disability, and did not present a comparator for a prima facie case.

- 7 -

admissible at trial. Putting that issue aside, however, Plaintiff's testimony, even if admissible, does not support a prima facie case for an EPA violation.[2] While there was a time that Plaintiff and Mr. Mote worked similar jobs, Plaintiff admits in her own testimony that Mr. Mote had received a different position in a different department when he made the comment. (*Id.*). It is Plaintiff's burden to show that her work and Mr. Mote's work were substantially equal. Plaintiff's testimony fails to establish any of Mr. Mote's job duties.

Accordingly, Plaintiff does not carry her burden to establish a prima facie EPA claim because she cannot show Mr. Mote engaged in substantially equal work.

## VI. Rule 56(d)

Plaintiff requests a denial, or deferral, of Defendant's Motion for Summary Judgment under Rule 56(d). (Doc. 95 at 7–8). "When a summary judgment motion is filed 'before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule [56(d), formerly] 56(f) motion fairly freely.'" *Allen v. Country Mut. Ins. Co., Inc.*, No. CV-13-01015-PHX-GMS, 2013 WL 6903748, at *2 (D. Ariz. Dec. 31, 2013) (*quoting Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 773 (9th Cir. 2003)). A motion under Rule 56(d) must identify how the sought after information would preclude summary judgment. *Id.* (*citing Spear v. United States*, No. CV-11-1742-PHX-PGR, 2012 WL 2029747, at *2 (D. Ariz. June 6, 2012)).

The Court need not consider whether Defendant improperly withheld discovery because Plaintiff has not indicated how the requested document would preclude summary judgment. Plaintiff alleges that Defendant improperly withheld a draft termination summary made in June or July 2019. (Doc. 95 at 7-8). Yet, Plaintiff was terminated 18 months after its creation. (*Id.* at 6). Ultimately, Plaintiff's firing occurred over a year later because she did not return to work after 18 months.

Because Plaintiff has not shown that facts within the June/July 2019 draft

---

[2] Plaintiff argues defense-witness's testimony that the highest paid employees in Plaintiff's division were women is inadmissible hearsay. (Doc. 96 at 30–31). The Court does not reach the admissibility of either Defendant's or Plaintiff's inadmissible evidence because Plaintiff could not make a prima facie case even with favorable evidentiary rulings.

- 8 -

termination summary would preclude summary judgment, her request under Rule 56(d) is denied.[3]

**CONCLUSION**

In sum, Defendant has shown that it is entitled to summary judgment on all of Plaintiff's claims.

Accordingly,

**IT IS THEREFORE ORDERED** Defendant Honeywell International Inc.'s Motion for Summary Judgment (Doc. 91) is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** directing the Clerk of Court to vacate all pending deadlines, conferences and the February 13, 2024 trial date.

Dated this 2nd day of February, 2024.

G. Murray Snow
Chief United States District Judge

---

[3] Plaintiff also argues Defendant's Motion for Summary Judgment should be denied as a sanction because Defendant included photos of Plaintiff in its Statement of Undisputed Material Facts. (Doc. 95 at 9). Plaintiff alleges Defendant's filing of these photos violates A.R.S. § 13-1425, which prohibits the disclosure of images depicting people in states of nudity with an intent to "harm, harass, intimidate, threaten or coerce the depicted person." A.R.S. § 13-1425(A)(3). There is no evidence these photos were submitted with any improper intent. More importantly, the photos appear in a heavily redacted form and do not depict Plaintiff in a "state of nudity" as defined by the statute. *Id.* §§ 13-1425(A)(1), (D)(7); *see also* A.R.S. § 11-811(E)(14). Accordingly, the Court will not impose a sanction.

- 9 -